IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ZACKARIAH BENNETT, | No. 87007-6-I |
| Appellant, | |
| v. | DIVISION ONE |
| MELVINA MANNING, | UNPUBLISHED OPINION |
| Respondent. | |

SMITH, J. — Zackariah Bennett is the father of T.B. Since 2008, Bennett's mother, Melvina Manning, has had legal custody of T.B. Bennett sued Melvina Manning alleging custodial interference and tortious interference with parental rights and alienation of affection, amongst other claims. Manning moved for summary judgment, which was granted. Because Bennett's claims were heard on the merits in the previous domestic violence protection order hearing and his parental rights to T.B. have been terminated, we affirm the trial court.

FACTS

Zackariah Bennett is the biological father of T.B. Melvina Manning, Bennett's mother, has had legal custody of T.B. since 2008. In addition to the custody order, Manning, on behalf of T.B., was also granted a restraining order against Bennett. In 2013, Bennett's parental rights were terminated, and Manning became T.B.'s legal guardian. From 2008 to 2019, Bennett did not attempt to contact T.B.

In 2019, Bennett went to Manning's home unannounced, attempting to speak with T.B. In 2022, Bennett returned to Manning's home, demanding that T.B. speak with him and meet T.B.'s siblings. T.B. stated he did not want to speak with Bennett, and Bennett got agitated and aggressive. Based on the two incidents, Manning requested an anti-harassment order to prevent Bennett from contacting her and T.B. The court determined sua sponte that the request should be heard as a domestic violence matter. Ultimately, the court granted Manning and T.B. a domestic violence protection order (DVPO) against Bennett.

In 2023, Bennett initiated a suit against Manning alleging: (1) defamation of character, (2) intentional and/or reckless infliction of emotional distress, (3) fraud, (4) perjury, (5) abuse of process, (6) intercepting, recording, or divulging private communication, (7) custodial interference, and (8) tortious interference with parental rights and alienation of affections. Bennett claimed he was harmed through the custody proceedings and when he attempted to introduce T.B. to his children. Manning moved for summary judgment, which was granted.

The court held that the plaintiff had no lawful basis as an individual to bring criminal prosecutorial action on behalf of the State. Additionally, the court held that because Bennett did not have any legal parental rights, no civil grounds existed for his claims. Lastly, the court held that any other issues presented were already adjudicated.

Bennett appeals.

ANALYSIS

Summary Judgment

Bennett claims summary judgment was inappropriate because, among other things, Manning's proposed summary judgment order was sent directly to the court without serving Bennett.[1]  We find it was not error for the court to enter the summary judgment order.

We review summary judgments under a de novo standard.  *McDevitt v. Harborview Med. Ctr.,* 179 Wn.2d 59, 64, 316 P.3d 469 (2013).

Under CR 56(c),  a party's motion "shall be filed and served not later than 28 calendar days before the hearing."  If the court finds that "there is no genuine issue as to any material fact[,] . . . the moving party is entitled to a judgment as a matter of law."  CR 56(c).

Under RAP 9.5(a) and RAP 9.6(a), the record includes the designation of clerk's papers and the verbatim report of proceedings.  A party may not "incorporate, by reference, trial court briefs into appellate briefs."  *Mine Holding Tr. v. Pavlish*, 32 Wn. App. 2d 727, 739-40, 559 P.3d 517 (2024).  " '[I]nsufficient record on appeal precludes review of the alleged errors.' "  *View Ridge Estates Homeowners Ass'n v. Guetter*, 30 Wn. App. 2d 612, 637, 546 P.3d 463 (2024) (quoting *Bulzomi v. Dep't of Lab. & Indus.*, 72 Wn. App. 522, 525, 864 P.2d 996 (1994)).

---

[1]  Bennett's motion to supplement the record was granted on December 8, 2025.  Exhibit B is an excerpt from the summary judgment hearing that was not transcribed by the court.  Under RAP 9.2, it is the appellant's burden to perfect the record.  Bennett failed to perfect the record by providing the court reporter's transcript.  Thus, we decline to review Exhibit B.

Our court rules do not require that the adverse party is served with the proposed summary judgment order. Under CR 56(c), motions "and any supporting affidavits, memoranda of law, or other documentation shall be filed and served not later than 28 calendar days before the hearing." The court rules do not address the service of the proposed order. We find no error with the court's acceptance of the proposed summary judgment order without serving Bennett.

Due Process Rights

Bennett claims that his due process rights were violated when he was not served the proposed order and when the court failed to consider critical filings.[2] We decline to review this issue because Bennett did not perfect the record.

Alleged due process right violations are reviewed de novo. *State v. Mullen*, 171 Wn.2d 881, 893-94, 259 P.3d 158 (2011).

On appeal, the appellant has "the burden of perfecting the record so that the reviewing court has before it all of the relevant evidence, arguments, and rulings." *Guetter*, 30 Wn. App. 2d at 637.

Bennett's brief cited to the summary judgment hearing's record to support that his due process rights were violated. However, this court did not receive the report of proceedings for review. Because Bennett has the burden to provide all relevant evidence to this court, and he did not perfect the record, this court is

---

[2] Bennett asserts that the court violated his due process rights when it failed to consider his motion to correct misrepresentation. In the court's order granting defendant's motion for summary judgment, it stated that the court considered "the record in this case [and] the materials submitted by the parties in regard to this motion." The record does not support Bennett's assertion.

unable to review if his claims are supported. We decline to review Bennett's due process claim.

Res Judicata

Bennett claims that the court erred when it held that his claim was precluded by res judicata because the DVPO was limited in scope and the claims in this case "could not have been litigated or resolved in the prior DVPO proceedings."

Res judicata is a question of law that this court reviews de novo. *Scotsman Guide, Inc. v. Simmons*, 35 Wn. App. 2d 203, ¶17, 574 P.3d 584 (2025).

Res judicata, or claim preclusion, applies when a prior judgment bars "litigation of a subsequent claim if the prior judgment has 'a concurrence identity with [the] subsequent action in (1) subject matter, (2) cause of action, (3) persons and parties, and (4) the quality of the persons for or whom the claim is made.' " *City of Arlington v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 164 Wn.2d 768, 791-792, 193 P.3d 1077 (2008) (alteration in original) (internal quotation marks omitted) (quoting *In re Election Contest Filed by Coday*, 156 Wn.2d 485, 500–01, 130 P.3d 809 (2006)).

Bennett does not dispute two res judicata elements: the parties and the quality of persons. Therefore, we review whether Bennett's claim is barred by res judicata due to the subject matter or cause of the action.

*Subject Matter*

Washington courts have held that "the same subject matter is not necessarily implicated in cases involving the same facts." *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 866, 93 P.3d 108 (2004). "[A] 'cause of action which did not exist at the time of a former judgment could not have been the subject-matter of the action sustaining that judgment.' " *Weaver v. City of Everett*, 194 Wn.2d 464, 480-81, 450 P.3d 177 (2019) (quoting *Harsin v. Oman*, 68 Wash. 281, 284, 123 P. 1 (1912)).

The DVPO pertained to the 2022 events between Bennett, Manning, and T.B. During the DVPO proceedings, Bennett claimed that Manning deprived him of a relationship with T.B., and that Manning caused Bennett emotional distress. Bennett's suit focuses on the same event as the DVPO: when Bennett showed up unannounced at Manning's home in 2022. Both actions have the same subject matter.

*Cause of Action*

In determining whether two suits have the same causes of action, courts consider "(1) whether the rights or interests established in the prior judgment would be destroyed or impaired by the prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the suits involved infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *Ensley v. Pitcher*, 152 Wn. App. 891, 903, 222 P.3d 99 (2009). Not all four factors must be present to bar a claim. *Ensley*, 152 Wn. App. at 903.

The DVPO hearing found that "Bennett's course of conduct served no legitimate purpose" and "Manning and T.B. were intimidated by Bennett's behavior." If the trial court reviewed Bennett's claims and found in favor of Bennett, it would contradict the DVPO's finding that Bennett unlawfully harassed Manning and T.B. Additionally, because both suits involve the same incident, Bennett presented the same evidence as in the DVPO and both suits have the same cause of action. The trial court properly held that res judicata applies.

<u>Collateral Estoppel</u>

Bennett asserts that the court erred in holding that collateral estoppel barred his claim because the DVPO hearing limited its scope to determining whether a protection order should be granted. Bennett contends that the issues in this suit were not resolved in the DVPO proceedings. Manning claims that Benntt's allegations were previously adjudicated in court. We find that this suit meets the elements for collateral estoppel.

This court reviews claims of collateral estoppel under a de novo review. *Weaver v. City of Everett*, 4 Wn. App. 2d 303, 313, 421 P.3d 1013 (2018).

" 'When a subsequent action is on a different claim, yet depends on issues which were determined in a prior action, the relitigation of those issues is barred by collateral estoppel.' " *Arlington*, 164 Wn.2d at 792 (quoting *Hilltop Terrace Homeowner's Ass'n v. Island County*, 126 Wn.2d 22, 31, 891 P.2d 29 (1995)). To meet collateral estoppel, there must be: " '(1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4)

7

application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied.' " *Arlington*, 164 Wn.2d at 792 (internal quotation marks omitted) (quoting *Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 507, 745 P.2d 858 (1987)).  To be precluded, the issue must " 'must have been actually litigated and necessarily determined in the prior action.' " *Arlington*, 164 Wn.2d at 792 (quoting *Shoemaker*, 109 Wn.2d at 508).

As discussed *supra*, both the DVPO proceeding and this suit have identical issues.  First, the DVPO's issue was whether Bennett's actions towards Manning and T.B. were unlawful harassment.  In this suit, Bennett claims that Manning committed intentional infliction of emotional distress when Manning made statements in front of him and his other children.  Both actions had identical issues: whether Bennett or Manning harassed the opposing party.  Second, the DVPO was a final judgment on the merits, and Bennett's appeal was dismissed.  Third, Bennett asserts a claim against Manning, who was a party in the DVPO.  Lastly, the application of the collateral doctrine does not work an injustice against Bennett because he was not deprived of his legal rights.  Although Bennett is T.B.'s biological father, he relinquished his parental rights to T.B. when he signed the parental termination order.  No injustice to Bennett occurred through the application of the collateral doctrine.  Seeing no error, we affirm.

Custodial Interference

Bennett claims that Manning committed custodial inference in April, May and August of 2008.  Bennett asserts that the court erred in dismissing his

8

custodial interference claims because he meets the statutory elements in RCW 9A.40.060. Particularly, about the incident in May 2008, Bennett says Manning made false allegations of abandonment and abuse to obtain a protection order and temporary custody order.[3] We find that the court did not err.

Under RCW 9A.40.060, a relative of the child is guilty of custodial interference if the relative acts with "the intent to deny access to the child . . . by a parent, guardian, institution, agency, or other person having a lawful right to physical custody of such person" and the relative "takes, entices, retains, detains, or conceals the child or incompetent person from a parent, guardian, institution, agency, or other person having a lawful right to physical custody of such person." The purpose of this statute was to "criminalize a parent intentionally depriving the other parent of the right to time with their child." *State v. Pesta*, 87 Wn. App. 515, 522, 942 P.2d 1013 (1997). "The decision whether to file criminal charges is within the prosecutor's discretion." *State v. Reed*, 75 Wn. App. 742, 746, 879 P.2d 1000 (1994).

No evidence shows that the State charged Manning with custodial interference. Because Bennett does not have the authority to charge Manning with custodial inference, the court did not err.

---

[3] In 2013, Bennett relinquished his parental rights and consented to relinquish T.B. to adoptive parents. Because Bennett voluntarily terminated his parental rights, we decline to review Bennett's allegations about Manning's alleged abandonment and abuse statements.

Tortious Interference

Bennett claims that the court erred in dismissing his tortious interference claim because he has a valid claim of action under *Wyatt v. McDermott*[4] and *Strode v. Gleason*, 9 Wn. App. 13, 510 P.2d 250 (1973). Manning asserts that Bennett relinquished his parental rights, therefore the court did not err by granting summary judgment to his tortious interference claim. We agree with Manning.

Under *Strode*, tortious interference is committed when

1. An existing family relationship[;]

2. A wrongful interference with the relationship by a third person[;]

3. An intention on the part of the third person that such wrongful interference results in a loss of affection or family association[;]

4. A causal connection between the third parties' conduct and the loss of affection[; and]

5. That such conduct resulted in damages.

9 Wn. App. at 14-15. " 'A parent who has been wrongfully deprived of the company of [their] child, by interference with such custody, association and companionship, may recover damages.' " *Strode*, 9 Wn. App. at 18 (quoting *Pickle v. Page*, 252 N.Y. 474, 169 N.E. 650 (1930)).

Bennett voluntarily relinquished his parental rights to T.B. in 2013. Therefore, Bennett did not have custody rights for Manning to interfere with. Additionally, between 2008 and 2019, Bennett did not attempt to contact T.B. Even if Bennett had not relinquished his parental rights, the record does not

---

[4] *Wyatt v. McDermott* is not binding on this court, therefore we decline to adopt the ruling of the *Wyatt* court. 283 Va. 685, 725 S.E.2d 555 (2012).

support that Bennett and T.B. had an existing relationship. The trial court did not err in dismissing Bennett's tortious interference claim.

We affirm.

_____
Smith, J.

WE CONCUR:

_____      _____
Coburn, J.                   Mann, J.