# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| WHIDBEY ENVIRONMENTAL ACTION NETWORK (WEAN), | ) ) ) | NO. 80093-1-I |
| Appellant, | ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| GROWTH MANAGEMENT HEARINGS BOARD, | ) ) ) ) | |
| Respondent, | ) ) | |
| ISLAND COUNTY, | ) ) | |
| Additional Party. | ) ) ) | FILED: March 9, 2020 |

LEACH, J. — Whidbey Environmental Action Network (WEAN) appeals the superior court's affirmation of a Western Washington Growth Management Hearings Board (GMHB) order. WEAN challenges a decision that Island County's revised critical areas ordinance brought it into partial compliance with the Growth Management Act (GMA).[1]

The GMHB found that Island County's first updated critical areas ordinance failed to comply with the GMA. In response, Island County adopted a revised buffer provision for Natural Area Preserves (NAPs) and designated

---

[1] Ch. 36.70A RCW.

seven species of plants and 12 critical areas as species and "habitats of local importance." Because the revised buffer provision focuses only on species preservation, it does not comply with the GMA. And because Island County's method of designating critical areas does not provide sufficient information to protect these areas, it also does not comply with the GMA.

But WEAN fails to show that the GMA requires Island County to designate nonprairie habitat. And it did not meet its burden to show that Island County's designation of critical areas as "habitats of local importance" violates the GMA.

We reverse in part, affirm in part, and remand to the superior court to remand to the GMHB with instructions consistent with this opinion.

FACTS

Island County adopted critical area regulations as required by the GMA.[2] In 2014, Island County updated its comprehensive plan and development regulations for Fish and Wildlife Habitat Conservation Areas (FWHCAs) by enacting ordinance C-75-14.[3] WEAN challenged the ordinance. On June 24,

---

[2] Island County critical areas regulations are at chapter 17.02B of the Island County Code (ICC). The record includes the code version referred to here. Island County has revised its code since enacting the ordinance at issue here.
See https://library.municode.com/wa/island_county/codes/code_of_ordinances. ·

[3] Island County also enacted an interim ordinance C-16-15. Stating that "the adoption of an interim ordinance cannot cure non-compliance," the GMHB declined to consider that ordinance (citing Friends of the San Juans v. San Juan County, No. 03-2-00-3c, at 10 (W. Wash. Growth Mgmt. Hr'gs Bd. July 21, 2005)).

2015, the GMHB decided that ordinance C-75-14 violated the GMA. The GMHB identified seven issues with the ordinance, including the three presented in this appeal.

First, the GMHB concluded that Island County's NAP buffer requirements, applicable to Whidbey Island's single NAP, the Naas Preserve, failed "to protect critical areas as required by RCW 36.70A.060" and failed "to include the Best Available Science in protecting critical area ecosystems in violation of RCW 36.70A.172."[4] Because Island County decided not to "establish buffers for the NAP" and "based [this decision] on an assumption that [the NAP] encompasses 'the land required for species preservation,' the County . . . failed to protect the NAP's habitat or the functional integrity of its ecosystem" as required by the GMA.

Second, the GMHB determined that Island County failed "to designate and protect habitat of flora listed by the federal or state governments as areas where endangered, threatened, or sensitive species have a primary association." By failing to do this, Island County also failed "to protect critical areas in violation of RCW 36.70A.060" and failed "to include the Best Available Science in protecting critical area ecosystems in violation of RCW 36.70A.172."

---

[4] Addressing ICC 17.02B.430.E.

The GMHB found that Island County's conclusion that the designations and protection of FWHCAs require it to consider only fauna and not flora for protection was "clearly erroneous and . . . also unsupported by facts and scientific evidence in the record." The GMHB also explained that Island County erroneously concluded that "plants must only be protected when it can be shown that a species of fish or wildlife has a primary association with a plant or plant community."

Third, the GMHB concluded that Island County failed to designate and protect westside prairies, oak woodlands, and herbaceous balds as habitats of local importance. As a result, it failed "to protect critical areas in violation of RCW 36.70A.060 and fail[ed] to include the Best Available Science in protecting critical area ecosystems in violation of RCW 36.70A.172." The GMHB identified several endangered, threatened, or sensitive (ETS) species occurring in westside prairies, oak woodlands, and herbaceous balds listed federally or by Washington State that Island County failed to designate.

In response to the GMHB decision, Island County adopted two ordinances, C-44-16 and C-71-16, and submitted a compliance report.[5] The county revised the language of the NAP buffer provision. And it designated

---

[5] The GMHB order challenged by WEAN involves only the issues addressed by ordinance C-17-16.

-4-

seven species of plants and 12 westside prairies, oak woodlands, and herbaceous balds as "of local importance."

WEAN objected to finding compliance. It asserted the following: (1) Island County's amendments to its updated comprehensive plan and development regulations violated the GMA's best available science (BAS) and protection requirements; (2) Island County's continued use of the language of "species preservation" and failure to adopt minimum buffers of 100 feet violated the GMA; (3) Island County failed to follow BAS because it did not designate "historic" plant species and habitat for "non-prairie" species; (4) Island County erred in designating critical areas associated with ETS species as "habitats of local importance" rather than areas where ETS species have a "primary association;" and (5) Island County's use of a list of sites and a map in its designation of critical areas and the omission of several smaller sites violated the GMA.

WEAN asked to supplement the record before the board and add exhibits. It did not file a petition raising new issues or challenges to C-71-16. The GMHB allowed Island County extra briefing pages, allowed parties to supplement the record, and took official notice of an exhibit.[6] WEAN and Island County each filed BAS summaries.

---

[6] Exhibit 71 was "a single page from the U.S. Dept. of Agriculture, described as data on the ongoing farm acreage decline in Washington State."

In September 2016, the GMHB issued an order finding compliance with three of the original seven issues and continuing noncompliance with the remaining four. The GMHB concluded that the amended language referring to buffers in ICC 17.02B.430 satisfied the GMA. It stated that the provision properly included language requiring "the County to ensure" that development resulted in "'no net loss of habitat functions and values.'" Further, the GMHB found that the ICC ensured that if development resulted in such a loss of habitat, it had "to include buffers reflecting the sensitivity of the habitat to the proposed development." The GMHB also stated that ICC 17.02B.410 served to reinforce protections by requiring a biological site assessment for all development proposals within 1,000 feet of the NAP, unless the proposed action was determined to result in "minor impacts." It concluded that Island County did not violate the GMA when it decided not to adopt a firm minimum buffer width.[7]

The GMHB determined that Island County's designation of plant species and 12 westside prairies, oak woodlands, and herbaceous balds as "habitats of local importance" satisfied the GMA's designation requirements.

---

[7] The GMHB stated that WEAN failed to raise concerns "regarding buffers for the forest community at the NAP boundary." Instead, it raised concerns about controlled burning and "resulting smoke." But the GMHB elected to address the challenge.

The GMHB denied WEAN's motion for reconsideration. WEAN sought review in the superior court in November 2016. In April 2018, the superior court affirmed the GMHB decision.

WEAN appeals.

## STANDARD OF REVIEW

The GMHB is authorized to decide compliance with the GMA.[8] It has the power to invalidate noncompliant plans and development regulations.[9] The GMHB presumes a plan is valid "unless it determines that the action by the state agency, county, or city is clearly erroneous in view of the entire record before the board and in light of the goals and requirements of [the GMA]."[10] When it evaluates a plan, it defers to a county's decisions that are consistent with the GMA.[11] A challenger has the burden of demonstrating that the action taken by the county under the GMA is "clearly erroneous."[12] If, after a review of the entire record, the GMHB has a "'firm and definite conviction that a mistake has been committed,'" it will find the action "'clearly erroneous.'"[13]

---

[8] RCW 36.70A.280.
[9] RCW 36.70A.302; Thurston County v. W. Wash. Growth Mgmt. Hr'gs Bd., 164 Wn.2d 329, 340, 190 P.3d 38 (2008).
[10] RCW 36.70A.320(3); WAC 365-196-040; Thurston County, 164 Wn.2d at 340.
[11] RCW 36.70A.320(1); Thurston County, 164 Wn.2d at 340.
[12] RCW 36.70A.320(3).
[13] Lewis County v. W. Wash. Growth Mgmt. Hr'gs Bd., 157 Wn.2d 488, 497, 139 P.3d 1096 (2006) (quoting Dep't of Ecology v. Pub. Util. Dist. No. 1 of Jefferson County, 121 Wn.2d 179, 201, 849 P.2d 646 (1993)).

The Washington Administrative Procedures Act[14] governs judicial review of GMHB actions. When this court reviews a decision by the GMHB, it stands "in the same position as a superior court reviewing a board's decision."[15] A party may challenge the GMHB's decision if it resulted from an erroneous interpretation or application of the law, was not supported by substantial evidence, and was arbitrary or capricious.[16] The challenger has the burden of establishing the invalidity of the GMHB's decision.[17]

We review a challenge to the GMHB's interpretation or application of the law de novo.[18] When we interpret a statute, our goal is to "give effect to the legislature's intent."[19] We first look to the legislation's plain language "considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole."[20] We give substantial weight to the GMHB's interpretation of the GMA but are not bound by it.[21] We do not liberally construe the GMA.[22]

---

[14] Ch. 34.05 RCW.
[15] Thurston County, 164 Wn.2d at 341 (citing Lewis County, 157 Wn.2d at 497).
[16] RCW 34.05.570(3)(d), (e), (i).
[17] RCW 34.05.570(1)(a); Thurston County, 164 Wn.2d at 341.
[18] King County v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd., 142 Wn.2d 543, 553, 14 P.3d 133 (2000).
[19] TracFone Wireless, Inc. v. Dep't of Revenue, 170 Wn.2d 273, 281, 242 P.3d 810 (2010).
[20] State v. Evans, 177 Wn.2d 186, 192, 298 P.3d 724 (2013).
[21] Thurston County, 164 Wn.2d at 341.
[22] Thurston County, 164 Wn.2d at 342.

A challenger's claim that the record lacks substantial evidence to support the GMHB's decision raises a mixed question of law and fact.[23] We determine the law de novo and apply it to the GMHB's findings.[24] We review challenged findings of fact for substantial evidence.[25] Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the finding.[26]

An agency's decision is arbitrary and capricious "if it is willful and unreasoning and disregards or does not consider the facts and circumstances underlying the decision."[27] "A decision is not arbitrary or capricious if there is room for more than one opinion and the decision is based on honest and due consideration," even if we disagree with it.[28]

## ANALYSIS

WEAN challenges the GMHB's order determining partial compliance on three issues: the NAP buffer provision, the decision to designate the habitat of ETS species as "habitat of local importance," and the designation of this habitat,

---

[23] City of Arlington v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd., 164 Wn.2d 768, 779-80, 193 P.3d 1077 (2008).

[24] City of Arlington, 164 Wn.2d at 779-80.

[25] City of Redmond v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd., 136 Wn.2d 38, 46, 959 P.2d 1091 (1998).

[26] City of Redmond, 136 Wn.2d at 46.

[27] Stewart v. Dep't. of Soc. & Health Servs., 162 Wn. App. 266, 273, 252 P.3d 920 (2011) (citing Alpha Kappa Lambda Fraternity v. Wash. State Univ., 152 Wn. App. 401, 421, 216 P.3d 451 (2009)).

[28] Stewart, 162 Wn. App. at 273 (citing Alpha Kappa Lambda Fraternity, 152 Wn. App. at 421-22).

westside prairies, oak woodlands, and herbaceous balds, with a list and reference to a map.

Island County contends that we should not review some issues WEAN raises because it did not present them to the GMHB as required. Because WEAN did not raise the question of Island County's failure to designate historic species, we do not address it here.[29] But the GMHB considered WEAN's other assertions, so we review them.

### The Growth Management Act

The legislature adopted the GMA in 1990. The GMA requires counties and cities of a certain size to adopt comprehensive plans for development.[30] One goal of the GMA is to ensure that local governments act to protect the environment; so the act requires as a mandatory element of a comprehensive plan the designation and protection of critical areas, including FWHCAs.[31] Counties must designate critical areas and must adopt regulations to protect their "functions and values."[32] These regulations must at least prevent new harm to critical areas.[33]

---

[29] The parties did discuss this issue in their filings.
[30] RCW 36.70A.040.
[31] RCW 36.70A.070, .030(6); WAC 365-190-080; WAC 365-196-830.
[32] RCW 36.70A.060(2), .170, .172(1).
[33] Swinomish Indian Tribal Cmty. v. W. Wash. Growth Mgmt. Hr'gs Bd., 161 Wn.2d 415, 430, 166 P.3d 1198 (2007) (concluding that a county's ordinance adopting a "no harm" standard for agricultural use in areas designated critical areas and agricultural land sufficiently protected the critical habitat).

In 1995, the legislature "amended the GMA to strengthen protection of critical areas."[34] RCW 36.70A.172(1) now requires that when a county "designat[es] and protect[s] critical areas under this chapter" it must "include the best available science in developing policies and development regulations to protect the functions and values of critical areas."

As directed by the legislature, the Department of Commerce (DOC) adopted guidelines for classifying critical areas and identified the responsibilities of counties to protect these areas.[35] The guidelines describe FWHCAs as

> areas that serve a critical role in sustaining needed habitats and species for the functional integrity of the ecosystem, and which, if altered, may reduce the likelihood that the species will persist over the long term. These areas may include, but are not limited to, rare or vulnerable ecological systems, communities, and habitat or habitat elements including seasonal ranges, breeding habitat, winter range, and movement corridors; and areas with high relative population density or species richness.[36]

When designating FWHCAs, counties should "identify and classify seasonal ranges and habitat elements where federal and state listed endangered, threatened and sensitive species have a primary association and

---

[34] Swinomish Indian Tribal Cmty., 161 Wn.2d at 426.

[35] RCW 36.70A.050; see also RCW 36.70A.190(4)(b) (directing the DOC to promulgate "procedural criteria to assist counties . . . in adopting comprehensive plans" to meet the GMA's goals and requirements).

[36] WAC 365-190-030(6)(a); see also WAC 365-190-130(1) (defining "[f]ish and wildlife habitat conservation" as "land management for maintaining populations of species in suitable habitats within their natural geographic distribution so that the habitat available is sufficient to support viable populations over the long term and isolated subpopulations are not created").

which, if altered, may reduce the likelihood that the species will persist over the long term."[37] Counties should also "identify, classify and designate locally important habitats and species."[38] "Habitats of local importance" are "those areas found to be locally important by counties and cities."[39]

Counties must both designate critical areas and adopt regulations for their protection.[40] "Although counties and cities may protect critical areas in different ways or may allow some localized impacts to critical areas, or even the potential loss of some critical areas, development regulations must preserve the existing functions and values of critical areas" and "may not allow a net loss of" ecosystem "functions and values."[41] Development regulations that allow harm to critical areas "must require compensatory mitigation of the harm."[42] When counties develop FWHCAs, they "should consider . . . [e]stablishing buffer zones around [the FWHCAs] to separate incompatible uses from habitat areas."[43]

---

[37] WAC 365-190-130(4)(a); see also WAC 365-190-130(2)(a) (stating that counties should consider "[a]reas where endangered, threatened, and sensitive species have a primary association").

[38] WAC 365-190-130(4)(b); see also WAC 365-190-130(2)(a) (stating that among the FWHCAs "that must be considered for classification and designation" are "[h]abitats and species of local importance, as determined locally").

[39] WAC 365-190-030(6)(b).

[40] WAC 365-196-830(1).

[41] WAC 365-196-830(4).

[42] WAC 365-196-830(4).

[43] WAC 365-190-130(3)(a)(v).

Counties must include BAS when they develop critical area "policies and development regulations . . . to protect the functions and values" of these areas.[44] "The inclusion of the best available science in the development of critical areas policies and regulations is especially important to . . . decision-making affecting threatened or endangered species."[45] While counties may develop their own BAS, the DOC guidelines identify certain available BAS resources. These include information developed by the United States Fish and Wildlife Service (USFWS), the National Marine Fisheries Service, the Washington State Department of Fish and Wildlife (WDFW), and the Washington State Department of Natural Resources (DNR) Natural Heritage Program (NHP) and Aquatic Resources Program.[46]

Once counties identify and include BAS in their records, they "may depart from BAS if [they] provide[ ] a reasoned justification for such a departure."[47] Although "[w]hat constitutes a sufficiently reasoned process for departing from BAS is poorly defined in GMA jurisprudence," at a minimum counties must provide an explanation that is "rational and supported by evidence."[48]

---

[44] WAC 365-195-900(2); see also WAC 365-190-080(2), -130(3); WAC 365-196-830(5).
[45] WAC 365-195-900(3).
[46] WAC 365-190-130(4)(a).
[47] Ferry County v. Growth Mgmt. Hr'gs Bd., 184 Wn. App. 685, 717, 735, 339 P.3d 478 (2014).
[48] Ferry County, 184 Wn. App. at 740.

Natural Area Preserve Buffer Provision

WEAN asserts that the GMHB erroneously interpreted or misapplied the law when it decided that Island County's updated NAP buffer provision complied with the GMA because the ordinance does not protect all ecosystem functions and values. We agree.

We apply the same rules of statutory construction to ordinances as we do to state statutes.[49] We interpret statutes de novo.[50] When interpreting a statute, our goal is to "give effect to the legislature's intent."[51] We first look to the legislation's plain language, "considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole."[52] If the plain language of the statute results in two or more reasonable interpretations, it is ambiguous.[53] Only if the statute is ambiguous, do we apply traditional techniques of statutory construction.[54]

The GMA requires that counties adopt regulations to protect the "functions and values" of designated critical areas such as FWHCAs.[55] FWHCAs "serve a

---

[49] Sleasman v. City of Lacey, 159 Wn.2d 639, 643, 151 P.3d 990 (2007).
[50] Port of Seattle v. Pollution Control Hr'gs Bd., 151 Wn.2d 568, 587, 90 P.3d 659 (2004).
[51] TracFone Wireless, 170 Wn.2d at 281.
[52] Evans, 177 Wn.2d at 192.
[53] City of Seattle v. Winebrenner, 167 Wn.2d 451, 456, 219 P.3d 686 (2009).
[54] Cerrillo v. Esparza, 158 Wn.2d 194, 201, 142 P.3d 155 (2006).
[55] RCW 36.70A.060(2), .170, .172(1).

critical role in sustaining needed habitats and species for the functional integrity of the ecosystem."[56] As the GMHB determined in its initial decision and order in this case, the "functions and values" of a designated FWHCA are broader than simply "species preservation."

Island County's NAP revised buffer provision states,

> Buffers shall not be required adjacent to these areas as long as these areas encompass the land required for species preservation. The Planning Department shall confirm the public agency establishing and managing the area has included sufficient land within these areas to ensure no net loss of habitat functions and values. If buffers are required, they shall reflect the habitat sensitivity and the type and intensity of activity proposed to be conducted nearby.[57]

The first sentence prohibits buffers adjacent to the NAP for anything other than "species preservation," even if a buffer is needed to preserve habitat "functions and values." Neither of the two following sentences modify the first sentence.[58] "Shall" is a mandate. So ICC 17.02B.430E plainly and unambiguously allows the addition of buffers to an NAP only when it does not contain sufficient land for species preservation.

The second sentence directs the planning department to confirm that the land within the NAP is sufficient "to ensure no net loss of habitat functions and

---

[56] WAC 365-190-030(6)(a).
[57] ICC 17.02B.430.E.
[58] During oral argument, Island County agreed that neither of these latter two sentences modified the first sentence.

values." A buffer serves to reduce the impact of activities on land outside the reserve. Because this sentence addresses only the quantity of land within the NAP, it does not modify the requirement/limitation of the first sentence, which involves the land outside the NAP.

The third sentence does not require buffers or clarify when they might be required. So the revised NAP provision, read as a whole, does not ensure the values and functions of NAP will be protected from external impacts by buffers. Instead, this provision strictly limits that protection to situations requiring "species protection," a limit that is contrary to the mandate of the GMA.

So the GMHB erred when it decided that ICC 17.02B.430.E complies with the GMA.

Island County points to other code provisions that require a biological site assessment for development proposals within 1,000 feet of the NAP and require a buffer for any proposal that will result in loss of habitat functions and values within any FWHCA.[59] But these other provisions do not correct the single purpose limitation of NAPs established in the challenged buffer provision. Instead, they highlight another problem with it: its mandatory language conflicts with other sections of Island County's code. Island County cannot explain how its code protects an NAP when the NAP contains sufficient land for species

_____

[59] ICC 17.02B.400, .430.E.

-16-

preservation but requires a buffer to avoid deterioration of its habitat functions and values. Typically, a court applies the more recent and/or specific provision of a statute if two provisions conflict.[60] Applying that approach to these conflicting provisions produces the conclusion that no buffers shall be required when an NAP contains sufficient land for species preservation.

WEAN also asserts that the GMHB should have imposed a mandatory minimum 100-foot buffer on the south end of the reserve and failed to consider BAS when it declined to do this.[61] Because the GMHB erred in concluding that the buffer provision brought Island County into compliance, we do not consider this argument.

### Habitat of "Nonprairie" ETS Species

WEAN asserts that because Island County designated habitat for only three plant species identified in the GMHB's initial order as ETS, without considering other "non-prairie habitat" associated species, "such as the black lily," the GMHB's finding of compliance was arbitrary and capricious.

---

[60] Gorman v. Garlock, Inc., 155 Wn.2d 198, 201-11, 118 P.3d 311 (2005); Cf. ICC 17.02B.040.A (stating, "If a conflict exists between this chapter and another chapter or planning policy, the more restrictive shall apply."); ICC 17.02B.050.B (stating, "If any provision of this chapter conflicts with a provision of another chapter of Island County Code, or the Island County Comprehensive Plan, the more restrictive or protective provision shall apply.").

[61] The GMHB reviewed the 100-foot buffer minimum argument.

In its original order, the GMHB concluded that Island County failed to comply with the GMA's mandate to "designate and protect habitat of flora listed by the federal or state government as areas where endangered, threatened, or sensitive species have a primary association." The GMHB rejected Island County's construction of the GMA as requiring only designation of species and their critical habitats of animals, not plants.

GMHB's order stated,

> The record establishes one particular plant, the Golden Paintbrush (Castilleja levisecta), is listed by the Department of the Interior's USFWS as threatened and by the State of Washington as endangered. Five other plants located in the County are classified as either threatened or sensitive by the State of Washington: White Meconella (scientific name–Meconella oregano) listed as Threatened; White-top Aster (Sericocarpus rigidus) listed as Sensitive; Bulb-bearing Water-Hemlock (Circuta bulbifera) listed as Sensitive; Black Lily (Fritillaria camschatcensis) listed as Sensitive; and Tall Agoseris (Agoseris elata) listed as Sensitive.

The GMHB also stated, "According to the BAS Report, the Golden Paintbrush, White Meconella, and White-top Aster . . . occur in wet and dry prairies, herbaceous balds, and herbaceous communities atop coastal bluffs." It concluded that Island County violated the GMA by not designating any prairies or herbaceous balds as critical areas because it failed to "designate and protect" the habitat of ETS. It did not make a "finding regarding whether

-18-

other ETS species had a primary association with other habitats in Island County."[62]

When Island County revised its ordinance, it designated seven plant species, including all five species identified in the GMHB order, as species of local importance. It identified geographic locations for the white-top aster and golden paintbrush and required a biological site assessment and habitat management plan for these sites to ensure these species are protected.[63] It also designated twelve westside prairies, oak woodlands, and herbaceous balds as critical areas.

The record shows that all of the ETS species, except one, are associated with westside prairies, oak woodlands, and herbaceous balds.[64] The GMHB, in its initial order, found that wet and dry prairies, herbaceous balds, and herbaceous communities on coastal bluffs supported golden paintbrush, white meconella, and the white-top aster. And the BAS in the record states that tall agoseris "occurs in meadows, prairies, open woods, and rocky ridges." WEAN's submission to the record identified the black lily, the species it asserts here is a nonprairie species, as a type of "[v]ascular plant species historically associated with prairie and oak woodlands." (Emphasis added.)

_____

[62] It also noted that WEAN did not seek reconsideration of the GMHB's failure to find that other ETS species had "primary associations" with other habitats.

[63] ICC 17.02B.430.B.2, .3.

[64] Alaska alkaligrass is "not listed as [ETS] but included as a carryover from the previous code."

-19-

Island County's designations of prairies adequately protects prairie-associated species. The only ETS species not covered by the designation of westside prairies, oak woodlands, and herbaceous balds, is the bulb-bearing water-hemlock.[65] The BAS indicates it has not been observed in Island County since 1977. Any habitat designation for a species not recorded in the BAS for more than three decades would be speculative. And the GMA requires habitat protection, not enhancement.[66] Because the record does not show the current existence of this species in any habitat that Island County could designate for protection, WEAN fails to establish that the GMHB erred in finding compliance on this basis.

<u>Habitats of Local Importance</u>

WEAN asserts that Island County should have designated the westside prairies, oak woodland, and herbaceous balds as habitats of "primary association" with ETS species rather than habitats "of local importance." The claim fails.

The GMA does not provide classifications for FWHCAs. The DOC guidelines state that among the FWHCAs that "must be considered for classification and designation" are areas "where endangered, threatened, and

---

[65] This species is identified as a "wetland obligate" that "grows along lake and marsh edges, in shallow water, and in slow-moving streams."
[66] <u>Swinomish Indian Tribal Cmty.</u>, 161 Wn.2d at 431.

-20-

sensitive species have a primary association" and "[h]abitats and species of local importance, as determined locally."[67]

The ICC provides the most detailed information about these two types of designations in its classification provision. It describes one classification as "[a]reas with a primary association with endangered, threatened, and sensitive species."[68] According to the ICC, these areas of "primary association" are associated with federally endangered or threatened species or native Washington species "identified by the [WDFW]" as ETS.[69] They are those habitats that "include both the immediate area where the [ETS] species occurs and the contiguous habitat necessary for its long term persistence."[70] Under the ICC, areas of "primary association" with ETS species include state NAPs and "areas designated by the" DNR's NHP "as high quality terrestrial ecosystems and shown on the most recent NHP maps and data."[71]

"Habitats . . . of local importance" . . . "have recreational, cultural, and/or economic value to citizens of Island County."[72] They "are not adequately protected, by other County, state, or federal policies, laws, regulations, or non-

---

[67] WAC 365-190-130(2)(a), (b); see also WAC 365-190-030(6)(b) (stating that habitats "of local importance" are "those areas found to be locally important by counties and cities").
[68] ICC 17.02.B.200.A.1.
[69] ICC 17.02.B.200.A.1.a, .b.
[70] ICC 17.02.B.060.
[71] ICC 17.02B.200.A.3, .4.
[72] ICC 17.02B.200.A.5.a.

regulatory tools that prevent degradation of the habitat or species."[73] They "represent either high-quality native habitat or habitat that has a high potential to recover to a suitable condition and which is of limited availability, highly vulnerable to alteration, or provides landscape connectivity which contributes to the integrity of the surrounding landscape."[74] "Habitats and species of local importance, without protection, would be diminished locally over the long term."[75]

The planning director makes the buffer determinations for FWHCA based on BAS.[76] Under the ICC, FWHCA areas "with a primary association with" ETS species "shall" have buffers determined "based on management recommendations provided by the [WDFW Priority Habitats and Species] Program" and the buffer requirement "shall" include consideration "of site-specific conditions" and the "recommendation of [a] qualified professional."[77] In contrast, "[t]he need for and dimensions of buffers" for "species and habitats of local importance shall be determined on a case-by-case basis by the Planning Director according to an adopted or approved habitat management plan for the specific resource."[78]

---

[73] ICC 17.02.B.200.A.5.b.
[74] ICC 17.02.B.200.A.5.c.
[75] ICC 17.02.B.200.A.5.d.
[76] ICC 17.02.B.430.E.
[77] ICC 17.02.B.430.E.
[78] ICC 17.02.B.430.E.

In its original noncompliance decision, the GMHB concluded that "Island County's failure to designate and protect habitat of flora listed by the federal or state governments as areas where endangered, threatened, or sensitive species have a primary association fails to protect critical areas in violation of RCW 36.70A.060" and that "Island County's failure to designate and protect Westside Prairies, Oak Woodlands, and Herbaceous Balds as habitats of local importance fails to protect critical areas in violation of RCW 36.70A.060." To correct this, Island County designated seven plant species as "species and habitats of local importance and protected species" and designated westside prairies, oak woodlands, and herbaceous balds as "habitats of local importance."

Island County's decision to designate the habitats of ETS species as "of local importance" may not be ideal. Nevertheless, WEAN fails to establish that the GMHB's order finding compliance on this issue was clearly erroneous.

First, WEAN asserts that "habitat of local importance" will be protected only "when the county chooses to depict that habitat on the county's critical areas map (which is static and does not change over time)." But the ICC does not require this approach to designating "habitats of local importance." And because we conclude below that the static map Island County used here to designate prairie habitat did not comply with the GMA, Island County will likely remedy any issue with its designation methodology.

-23-

WEAN also suggests that because buffer determinations differ depending upon the classification of the FWCHA, this difference in designation will trigger a different process for determining buffer needs. We agree. The planning director makes the final decision based on adopted habitat management plans for FWHCA designated as "habitats of local importance."[79] FWHCA areas "with a primary association with" ETS species "shall" have buffers determined "based on management recommendations provided by the WDFW [Priority Habitats and Species] Program" and the buffer requirement "shall" include consideration "of site-specific conditions" and the "recommendation of [a] qualified professional."[80] But WEAN fails to connect this difference in protection with a failure to protect the "functions and values" of designated critical areas as required by the GMA.[81] So this difference is not sufficient to establish that the GMHB erred in finding compliance.

WEAN points to the GMHB's original order concluding that Island County failed to designate "primary association" habitat to support its assertion that Island County failed "to protect critical areas." But the GMHB's original order also concluded that Island County violated the GMA by not designating westside

---

[79] ICC 17.02.B.430.E. The county mandated a habitat management plan for two of the species, the white-top aster and golden paintbrush. ICC 17.02.B.430.B.2., .3.
[80] ICC 17.02B.430.E.
[81] RCW 36.70A.060(2), .170, .172(1).

prairies, oak woodlands, and herbaceous balds as "habitat of local importance." The GMHB's order made clear that Island County should have designated these habitats in order to protect the ETS plant species.[82] The ETS plant species, for the most part, occur in this prairie habitat. Island County complied with that part of the GMHB order by designating this prairie habitat.

Some confusion arises, in part, because the GMHB did not explain why it ordered Island County to use both classifications. One possibility is that the GMHB agrees with Island County that these designations are overlapping. WEAN provides no authority showing otherwise. Because there is room for more than one opinion and the GMHB's decision was not unreasonable, WEAN fails to establish that the GMHB's decision was arbitrary and capricious. Also, because WEAN does not actually identify the evidentiary deficiencies in the record, it fails to establish that the GMHB acted without substantial evidence to support its finding of compliance on this issue.

We conclude that the GMHB did not err in determining Island County was compliant on this issue.

---

[82] For example, white meconella and white-top aster.

Designation of Westside Prairies, Oak Woodlands, and Herbaceous Balds

WEAN asserts that Island County's designations do not sufficiently "define which habitat types are protected and where they are located" and so the GMHB erred in finding that it complied with the GMA. We agree.

The GMA requires counties to designate and protect critical areas, including FWHCAs.[83] The GMA also requires counties to adopt regulations to protect these designated critical area functions and values.[84] Because counties meet the GMA mandate to protect a critical area when, at a minimum, their regulations prohibit activities in and adjacent to the designated area to degrade the area's functions and values,[85] the designation must provide enough information so that the county can identify when a proposed activity might negatively impact the critical area.

According to the DOC guidelines, "designation establishes . . . [t]he general distribution, location, and extent of critical areas."[86] Further,

> [i]nventories and maps should indicate designations of natural resource lands. In circumstances where critical areas cannot be readily identified, these areas should be designated by performance standards or definitions, so they can be specifically identified during the processing of a permit or development authorization.[87]

---

[83] RCW 36.70A.070, .030(6)(c); WAC 365-190-080; WAC 365-196-830.
[84] RCW 36.70A.060(2).
[85] See, e.g., Swinomish Indian Tribal Cmty., 161 Wn.2d at 430.
[86] WAC 365-190-040(5)(a)(iii).
[87] WAC 365-190-040(5)(b).

Under these guidelines, unless the critical areas can "be readily identified[,]" Island County "should" use performance standards or definitions to designate them.[88] Generally, the word "should" includes "both an obligatory and an exhortatory connotation."[89] But in an early case analyzing the meaning of "should" in policy documents, the GMHB held "that the use of either [should or shall] in a GMA policy document must be construed to have specific directive meaning."[90]

On remand, Island County designated 12 westside prairies, oak woodlands, and herbaceous balds as "habitats of local importance" by listing the names of these locations and directing the reader to a "[m]ap prepared by Watershed Company dated June 20, 2016."[91] It noted that the attached "map prepared by the technical consultant [was] not a survey" but identified "the general location of the designated areas." Island County then asserted that its "regulations . . . require delineation of the protected areas and identification of mitigation measures by a qualified professional," citing to ICC 17.02B.410. This provision requires that for any proposed development within 1,000 feet of a

---

[88] WAC 365-190-040(5)(b).
[89] State v. Smith, 174 Wn. App. 359, 367, 298 P.3d 785 (2013) (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1986)).
[90] City of Snoqualmie v. King County, No. 92-3-0004 (Cent. Puget Sound Growth Mgmt. Hr'gs Bd. Mar. 1, 1993).
[91] ICC 17.02.B.510.C.

critical area, Island County must conduct a biological site assessment, delineate the protected areas, and identify mitigation measures.

In its designation, Island County identified the general location and distribution of some of the critical areas, but it did not identify their size or boundaries. Island County's decision to include only a list and a map that is "not a survey," rather than performance standards or definitions, fails to meet the directive of the DOC guidelines for designation. While the guidelines are not rules, they instruct counties about the type of information necessary to meet the GMA's mandate to designate and protect habitats.

Island County did not follow the guidelines and created an information gap that leaves these habitats vulnerable. The provision requiring a biological site analysis any time an applicant proposes development within 1,000 feet of a critical area or its buffer[92] protects only a habitat with identifiable boundaries. Island County's challenged designations do not provide enough information for the planning director or anyone else to identify the boundaries of these FWHCAs. So Island County's assertion that this provision, with its "general" map that "is not a survey," protects these areas fails. Because Island County does not provide enough information in its designation to allow for protection of these habitats, it violates the GMA's mandate to designate in order to facilitate protection.

_____

[92] ICC 17.02.B.410.

Island County responds that the map "is only one of the many tools employed by the Planning Director in discharging his duties" and refers to ICC 17.02.B.200.C. This provision lists a number of other references that "are to be used as a guide for the County, project applicants, and/or property owners." Yet, according to the provision, these sources "are a reference and do not provide a final critical areas designation" and if they conflict with the general designation criteria for different types of FWHCAs, "the designation criteria shall control."[93] And Island County did not adopt designation criteria. A list of sources that the planning director "may" adopt does not ensure that the planning director will adopt the sources that properly identify the habitat Island County designated for protection.

WEAN also contends that the map resulted in the exclusion of smaller examples of prairie habitat. Despite Island County's contention that WEAN did not raise this issue before the GMHB, it reviewed the issue on WEAN's motion for reconsideration. But our conclusion that Island County's use of the list of locations and map to designate critical areas was contrary to the GMA makes it unnecessary for us to reach this issue.

Because Island County's use of the map and the list violates the GMA, the GMHB's decision finding compliance on this issue was arbitrary and capricious.

---

[93] ICC 17.02.B.200.C.

## CONCLUSION

We reverse and remand to the superior court to remand to the GMHB with instructions consistent with this proceeding. Island County's revised buffer provision fails to protect habitat values and functions as required by the GMA. And Island County's use of a map and a list of sites to designate critical habitat did not satisfy the GMA. The GMHB erred in deciding that these provisions were compliant.

WEAN fails to establish that the GMA requires counties to protect nonprairie habitats. WEAN also fails to show that Island County's designation of habitat as "of local importance" will result in a failure to protect the habitat and ETS species. So the GMHB did not err in its conclusion that Island County was in compliance on these issues.

_Leach, J._

WE CONCUR:

_Mann, A.C.J_

_Dwyer, J._